# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

|  |  |
|---|---|
| * * * * * * * * * * * * * * * * * * * * | |
| EVA MAGANA,                         * | No. 21-1234 |
|                                     * | |
|     Petitioner, * | |
|                                     * | Special Master Christian J. Moran |
|                                     * | |
| v.                                  * | |
|                                     * | Filed: November 21, 2024 |
| SECRETARY OF HEALTH                 * | |
| AND HUMAN SERVICES,                 * | |
|                                     * | |
|     Respondent. * | |
| * * * * * * * * * * * * * * * * * * * * | |

Michael A. Firestone, Marvin Firestone MD, JD & Associates, LLP, San Mateo, CA, for petitioner;
Joseph Leavitt, United States Dep't of Justice, Washington, DC, for respondent.

## RULING REGARDING VACCINATION[1]

Eva Magana alleges that a vaccination given to her on February 18, 2020 harmed her right shoulder. On this date, Ms. Magana received two received two vaccines---a diphtheria-tetanus-acellular pertussis vaccine ("Dtap") and a mumps-measles-rubella ("MMR") vaccine. The parties dispute two aspects of the immunization: first, into which shoulder each vaccine was given and second, the method of injection for the MMR vaccine.

As explained below, the record documenting the vaccination created by the pharmacist who vaccinated Ms. Magana is accepted as accurate. Overall, the

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

evidence supports a finding that the MMR vaccine was administered into Ms. Magana's right shoulder and that the MMR vaccine was administered subcutaneously.

I.     **Review of Evidence**

The evidence consists of five types: (A) medical records, (B) affidavits, (C) medical articles, (D) expert reports, and (E) deposition testimony. These are addressed below.

   A.     **Medical Records**

Ms. Magana received two vaccines at a Walgreen Pharmacy in Salinas, California on February 18, 2020. Exhibit 2 at 6, 8. The medical record states that the Tdap vaccine was administered in her left deltoid intramuscularly and the MMR vaccine was administered subcutaneously into her right arm. Id. The person administering the vaccines was Juan Abelardo Argueta-Trujillo.

Ms. Magana apparently first sought medical care approximately two months later. She informed a primary care physician in the Santa Lucia Medical Group that she was having "R Arm pain." Exhibit 4 at 12 (April 30, 2020). Another section states that "Pt got vaccine (MMR) and [illegible] pain in (R) arm pain since 2/18/2020." Id. The doctor assessed Ms. Magana with "(L) shoulder/arm pain." Id. Whether the doctor prescribed any treatment is not readily apparent.

Ms. Magana returned on May 8, 2020. Exhibit 5 at 2.[2] The complaint appears to be "Patient still continue with pain (L) shoulder[.] Still getting vaccine at pharmacy." Id. The doctor assessed her with limited range of motion in her left shoulder. Positive findings included: "(+) slap test" and "(+) Bicep tendon pain." Id. The doctor referred her to "Cater." Id.

Just three days later, Ms. Magana followed up at Santa Lucia Medical Group. Exhibit 5 at 10 (May 11, 2020). In the portion where a chief complaint might be recorded, the record states that Ms. Magana was "referred to Dr. Cater earlier." Id. In the portion of the form where a doctor could record impressions, the document states: "Pt [with] (R) arm / shoulder pain. She has not seen chiropractor yet." The progress note states, in part: "R arm pain . . . needs to see chiropractor." Id. at 10.

---

[2] Exhibit 5 contains handwritten transcriptions of some original medical records that appear within exhibit 4.

As Ms. Magana noted, in this medical record the letters say "R" appear to have been re-written from an "L." See Pet'r's Am. Mot. at 4. This correction is present in both the original medical record and the transcribed medical record. Exhibit 4 at 9 (original); Exhibit 5 at 10 (transcribed).

About one more month passed, and Ms. Magana returned to Saint Lucia Medical Group. Exhibit 5 at 9 (June 5, 2020).[3] Ms. Magana "has not seen [a] chiropractor yet." Id. She was complaining about "(R) arm / shoulder pain." Id. She was directed to see a chiropractor. Id.

The recommended visit with Cater Chiropractic occurred on June 16, 2020. Exhibit 6 at 4. She presented with "Rt arm pain" with an onset of "2-18-20." Id. She reported that she "Got a shot on (R) arm and ever since then (R) arm hurts." Id. at 5.

In the remainder of 2020, Ms. Magana had appointments at Saint Lucia Medical Group and Cater Chiropractic. Exhibit 5 at 7 (Aug. 21, 2020); Exhibit 6 at 7 (Aug. 28, 2020). These records do not contribute to resolving details about the February 18, 2020 vaccinations. Similarly, records from 2022 and more recently are not informative. For details, see Pet'r's Am. Mot. at 5 and Resp't's Resp. at 3.

**B.  Affidavits**

Ms. Magana submitted affidavits, but these have limited value for the presently pending issues. Ms. Magana, herself, averred that on February 18, 2020, she received one vaccine in each shoulder. Pet. ¶ 3, filed Apr. 16, 2021; Exhibit 1 ¶ 3.[4] She recognized that she does not know "which of the two vaccines was actually administered to [her] right shoulder." Id. She recalled the injection into her right shoulder was painful, causing her to yell. In contrast the left-sided vaccination "did not hurt significantly." Id. It is unclear, and Ms. Magana does not clarify in her affidavit, how the vaccines were administered into the left or right shoulder, subcutaneously or intramuscularly. Id.

The remaining affidavits, which are from Ms. Magana's employer, her sister, and her husband, mainly discuss how the shoulder pain has affected Ms.

---

[3] The June 5, 2020 visit appears in the transcribed records only, not the original medical records.

[4] Ms. Magana stated that she "only speak[s] Spanish and [has] very limited English comprehension." Exhibit 1 ¶ 2. Ms. Magana provided an affidavit from Victor Brooks certifying the accuracy of translation. Exhibit 7.

3

Magana's life. These affidavits do not discuss the shoulder of vaccination or the method of vaccination. See Exhibits 28-30.

### C. Medical Articles

Through counsel, Ms. Magana supports her argument regarding an error in her vaccination record by filing articles that discuss instances in which medical procedures were performed on a patient's wrong side. Exhibits 16-18.[5]

### D. Expert Reports

Ms. Magana and the Secretary submitted reports from experts about shoulder problems. Ms. Magana's expert is Marko Bodor, who has often assisted claimants in the Vaccine Program. Dr. Bodor examined Ms. Magana on September 13, 2023. Her current symptoms included an inability to open a jar and an inability to engage in recreational activities. Exhibit 22 at 1.

In a report dated December 17, 2023, Dr. Bodor presented opinions for litigation. As relevant to the pending issues, Dr. Bodor stated that: "It is certainly possible that there was a notation error by the pharmacist in regards to which vaccine was administered to Ms. Magana's right shoulder." Exhibit 23 at 3. Dr. Bodor also discussed how a vaccine might injure a person's shoulder. However, whether the vaccine did cause an injury to Ms. Magana is not presently pending.

The Secretary responded to Dr. Bodor's report by obtaining a report from Julie Bishop, who has sometimes testified on behalf of the Secretary. Dr. Bishop's report is mostly directed to topics outside the scope of the present ruling. However, Dr. Bishop argues that it would be illogical to conclude the Walgreen's records are wrong. Exhibit A, tab 1 at 8-9.

### E. Deposition of Vaccine Administer

The parties deposed the person who administered the vaccines, Dr. Trujillo. Exhibit 32. Dr. Trujillo has worked at Walgreen's pharmacy for 17 years. Exhibit 37 (deposition transcript) at 11. Each year, he receives training for perhaps as many three hours (but potentially less than three hours) about the proper technique

---

[5] These are: Charles McMonnies, Left-right discrimination in adults, 73 CLINICAL & EXPERIMENTAL OPTOMETRY 155 (1990); filed as Exhibit 16; John McKinley et al., 'Sorry, I meant the patient's left side': impact of distraction on left-right discrimination, 49 MEDICAL EDUC. 427 (2015); filed as Exhibit 17; Samuel Seiden & Paul Barach, Wrong-Side/Wrong-Site, Wrong-Procedure, and Wrong-Patient Adverse Events, 141 ARCH. SURG. 931 (2006); filed as Exhibit 18.

for administering vaccines.  Id. at 43.  A subcutaneous vaccine, like MMR, is injected with a needle that is 5/8th inch long.  Id. at 21, 32-35.  An intradermal vaccine is injected with a needle that is one inch long.  Id. at 22, 35.

## II.     Procedural History

Ms. Magana alleged the Tdap vaccine or the MMR vaccine harmed her shoulder.  Pet., filed Apr. 16, 2021.  Her case was assigned to the Office of Special Masters' Special Processing Unit.

The Secretary contested an award of compensation.  Resp't's Status Rep., filed May 31, 2022.  Reasons included the two issues resolving in this ruling.

After Ms. Magana filed one motion regarding the situs of vaccination and the method of vaccination, the case was transferred from the Special Processing Unit to the undersigned.  Order, issued Oct. 6, 2023.  The parties planned to develop additional evidence.  This additional evidence included the deposition of Dr. Trujillo and the reports from Dr. Bodor and Dr. Bishop.

With the evidence complete, Ms. Magana argued for fact rulings in her favor.  Pet'r's Am. Mot.  As discussed above and resolved below, Ms. Magana presents two alternatives.  First, she maintains that Dr. Trujillo erred in documenting which vaccine was administered to which shoulder.  Second, she contends that the MMR was administered intramuscularly, not subcutaneously.  The Secretary opposed these arguments.  Resp't's Resp.  Ms. Magana did not file a reply.  Thus, the issues are ready for adjudication.

## III.    Standards for Adjudication

A petitioner is required to establish her case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence."  Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).  Proof of medical certainty is not required.  Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

Distinguishing between "preponderant evidence" and "medical certainty" is important because a special master should not impose an evidentiary burden that is too high.  Andreu v. Sec'y of Health & Hum. Servs., 569 F.3d 1367, 1379-80 (Fed. Cir. 2009) (reversing special master's decision that petitioners were not entitled to

compensation); see also Lampe v. Sec'y of Health & Hum. Servs., 219 F.3d 1357 (Fed. Cir. 2000); Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993) (disagreeing with dissenting judge's contention that the special master confused preponderance of the evidence with medical certainty).

The Federal Circuit has recognized that medical records are presumptively accurate in recounting contemporaneous events relating to medical treatment. Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

## IV. First Issue: Shoulder of Vaccination

The parties start with common ground. Ms. Magana maintains that "It is an undeniable fact that wrong-side/wrong-site, wrong-procedure, and wrong-patient adverse events (WSPE) occur and are more likely to occur than most people realize." Pet'r's Am. Mot. at 22. For this proposition, Ms. Magana cites three medical articles. See footnote 5 above.

For his part, the Secretary does not attempt to deny what Ms. Magana characterizes as "undeniable." The Secretary recognizes that "left/right errors are possible." Resp't's Resp. at 6. Indeed, to find an example, one needs only to look at Ms. Magana's medical records from Santa Lucia. Although Ms. Magana complained about *right* shoulder pain, the doctor assessed her as having *left* shoulder pain. Exhibit 4 at 12. This discrepancy carried over to the next record, which was from May 8, 2020. Exhibit 5 at 2.[6] With respect to this difference, the Secretary stated: "respondent agrees that this notation regarding . . . left shoulder pain appears to be a scrivener's error." Resp't's Resp. at 2 n.1. Thus, the ensuing question is whether the pharmacist's notation that he administered the Tdap vaccine into Ms. Magana's left shoulder and that he administered the MMR vaccine into her right shoulder is, to borrow the Secretary's phrasing, "a scrivener's error"?

Ms. Magana cites cases in which special masters have found an error in a vaccination record with respect to where one vaccine was administered. Examples include Haynes v. Sec'y of Health & Human Servs., 18-1925V, 2021 WL 5458676 at *3 (Fed. Cl. Spec. Mstr. Oct. 13, 2021), and Steinbach v. Sec'y of Health & Hum. Servs., No. 15-1546V, 2016 WL 4751772, at *2 (Fed. Cl. Spec. Mstr. Aug. 4, 2016.

---

[6] Perhaps due to some confusion in reading the handwritten date of the record, the Secretary wrote that this appointment was on May 18, 2020. However, it appears that the appointment occurred on May 8, 2020.

These cases offer little help to Ms. Magana.  In those cases, the bulk of other medical records tended to undermine the reliability of the vaccination record.  However, that important factor is not present here.  The first medical record created after vaccination states: that "Pt got vaccine (MMR) and [illegible] pain in (R) arm pain since 2/18/2020."  Exhibit 4 at 12.  To the extent that this medical record says anything about the location of the vaccination, it tends to link the MMR vaccine to right arm pain.  Thus, the April 30, 2020 record tends to corroborate the pharmacist's vaccination record.  Other medical records are more neutral on this topic.  For example, the June 16, 2020 Cater Chiropractic record states: "Got a shot on (R) arm and ever since then (R) arm hurts."  Exhibit 6 at 5.  This statement about "a shot" into the right arm does not say much, if anything, about whether the shot was the Tdap shot or the MMR shot.  Ms. Magana has not identified any medical record contradicting the vaccination record.

Without persuasive support from medical records created in the four months after the vaccination, Ms. Magana could, potentially, find support in the testimony from Dr. Trujillo. However, Ms. Magana gained little helpful information.

Dr. Trujillo testified that he did not remember Ms. Magana.  Exhibit 32 (deposition transcript) at 12.  His usual practice is to record details about the administration of a vaccine while his patient is present.  Id. at 27.  He testified that he is not aware of making a mistake in how he recorded the shoulder (left or right) into which a vaccine was administered.  Id. at 30.

Overall, the evidence favors a finding that the MMR vaccine was administered into Ms. Magana's right shoulder.  This finding is based upon the pharmacist's vaccination record, which is entitled to a presumption of correctness.  Although Ms. Magana may legitimately argue that it is possible for vaccination records to contain a mistake, Ms. Magana has not presented persuasive evidence that transforms this possibility into a probability.

## V.   Second Issue: Method of Injection

A finding that the MMR vaccine was administered into Ms. Magana's right arm does not end the inquiry.  Ms. Magana's second argument is that assuming that MMR vaccine was given into her right shoulder, the MMR was administered into her muscle. Pet'r's Am. Mot. at 26-27.  To support this argument, Ms. Magana emphasizes that the "level and duration of [Ms. Magana's] pain support that the vaccination was mis-administered either too strongly or at an angle causing it to be injected into the muscle instead of subcutaneously."  Id. at 26.

Again, Dr. Trujillo's deposition testimony undermines Ms. Magana's contention. Dr. Trujillo averred that when he administers an MMR vaccine, he "grab[s] the skin and pull it a little bit, and then the syringe – the needle is introduced into a 45-[degree angle], and then the liquid is administered." Exhibit 32 (deposition transcript) at 32. He is aware that because he is pinching the skin and because of the size of the needle, "the needle is too small to reach the muscle." Id. at 33.

In short, the evidence about Dr. Trujillo's usual practice constitutes persuasive evidence that Dr. Trujillo followed the standard procedure by administering the MMR vaccine subcutaneously. Ms. Magana's account of pain, which is accepted as accurate, does not automatically mean that the MMR vaccine was given intramuscularly.

## VI.    Conclusion

For the reasons expressed above, a preponderance of the evidence supports a finding that Ms. Magana received an MMR vaccine in her right shoulder subcutaneously. The parties are directed to provide these findings of fact to the experts whom the parties retained.

Ms. Magana is further directed to file a status report proposing the next steps in the case. In this regard, if Ms. Magana wishes to continue her case, she should amend her petition because she cannot prevail on a claim that she experienced a shoulder injury related to vaccine administration as defined in the regulations. See Pet., filed Apr. 16, 2021, ¶¶ 25-26. Ms. Magana shall file this status report and, if appropriate, an amended petition by **January 8, 2025**.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master